## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| JASON RIVERA | : | No. 19-391 |

### MEMORANDUM

PRATTER, J.                                                                         May 3, 2023

A jury found Jason Rivera guilty of, among other charges, three counts of kidnapping and one count of conspiracy to commit kidnapping. Mr. Rivera, however, asserts that the evidence against him was legally insufficient to sustain a conviction on these counts. He now moves for an acquittal under Rule 29 of the Federal Rules of Criminal Procedure, or in the alternative, he moves for a new trial under Rule 33. For the reasons that follow, the Court denies both motions.

### BACKGROUND

A federal grand jury returned an indictment charging Mr. Rivera with eight counts: (1) conspiracy to commit kidnapping, in violation of 18 U.S.C. § 1201(c); (2-4) three counts of kidnapping, the first two resulting in death, in violation of 18 U.S.C. §§ 1201(a)(1), 2; (5) interstate travel in aid of a racketeering enterprise, in violation of 18 U.S.C. § 1952; (6-7) extortion and conspiracy to commit extortion in violation of 18 U.S.C. § 894; and (8) conspiracy to distribute 50 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841, 846.

The kidnapping charges—which are the only ones Mr. Rivera challenges in his present motions—involve conduct that took place in the summer of 2014. The victims in this case, brothers Vu and Viet Huynh and their friend Tan Voong, were drug dealers from Philadelphia who agreed to sell large quantities of marijuana supplied by Lam Trieu, a member of the street gang Born to Kill. When Mr. Voong and the Huynh brothers failed to pay back the money they owed

1

to Mr. Trieu, Mr. Trieu recruited Mr. Rivera, along with two other associates, to collect. Mr. Rivera and his associates traveled from New York to Philadelphia, where they coordinated with another member of the Born to Kill gang, Tam Le, to lure Mr. Voong and the Huynh brothers to a home in Southwest Philadelphia. When each of the victims arrived, they were attacked by Mr. Rivera and his associates, restrained with duct tape and zip ties, and told to pay the money they owed. When the Huynh brothers said they did not have the money, Mr. Rivera's associates forced the Huynh brothers to call Mr. Voong to bring the cash. When he arrived, Mr. Voong was attacked and restrained by Mr. Rivera and his associates. Mr. Rivera then searched Mr. Voong's car, where he found some $40,000 in U.S. currency.

Mr. Le then made the decision to kill the victims. He, along with, Minh Nguyen, and Mr. Rivera and his associates, placed the still-restrained victims into a van and drove them to the Schuylkill River. Mr. Le and Mr. Nguyen tied buckets of roofing cement to each victim's legs, stabbed them, and pushed them into the water. Both of the Huynh brothers were killed, though Mr. Voong managed to escape and survive his wounds. After the killings, Mr. Rivera and his associates returned to New York, where they received payment from Mr. Trieu in the form of a cut of the money recovered from Mr. Voong.

The Court presided over a six-day jury trial, and on October 25, 2022, a jury found Mr. Rivera guilty on seven counts of the indictment.[1]

## LEGAL STANDARD

Rule 29 provides that "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In considering a Rule 29 motion, the Court reviews the evidence in the light most

---

[1] Prior to the trial, the Government moved to dismiss Count 5 due to an intervening change in law as to that count.

favorable to the Government and draws all reasonable inferences in favor of the Government. *United States v. McKee*, 506 F.3d 225, 232 (3d Cir. 2007). The Court presumes that the jury properly evaluated the witnesses' credibility, "found the facts, and drew rational inferences." *United States v. Wasserson*, 418 F.3d 225, 237 (3d Cir. 2005). The Court must sustain the verdict "if a rational trier of fact could have found [the] defendant guilty beyond a reasonable doubt, and the verdict is supported by substantial evidence." *United States v. Arden*, No. 98-cv-379, 2009 WL 1971392, at *2 (E.D. Pa. July 7, 2009), *aff'd*, 433 F. App'x 127 (3d Cir. 2011). The movant's burden is a heavy one; the Court will only enter a judgement of acquittal in cases where the "prosecution's failure [is] clear." *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984).

Under Rule 33, a "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). In considering a Rule 33 motion, a Court does not view the evidence favorably to the Government, but rather exercises its own judgment. *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). Even if the Court "believes that the jury verdict is contrary to the weight of the evidence, it can order a new trial 'only if it believes that there is a serious danger that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" *United States v. Silveus*, 542 F.3d 993, 1004-05 (3d Cir. 2008) (quoting *Johnson*, 302 F.3d at 150). Motions for a new trial based on sufficiency of the evidence are disfavored and should be granted "only in exceptional cases." *Gov't of the Virgin Islands v. Derricks*, 810 F.2d 50, 55 (3d Cir. 1987).

DISCUSSION

## I.    Sufficiency of the Evidence

Both of Mr. Rivera's motions assert that the evidence was insufficient to sustain his conviction. The Court therefore evaluates these arguments under the higher Rule 33 standard. *See United States v. Davis*, No. 18-270, 2020 WL 5898783, at *2 (E.D. Pa. Oct. 2, 2020).

### A.  Kidnapping

A person is guilty of federal kidnapping who (1) "unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away" any person, (2) "holds [the victim] for ransom or reward or otherwise," and (3) travels in interstate commerce or makes use of any instrumentality of interstate commerce "in committing or in furtherance of the commission of the offense." 18 U.S.C. § 1201(a). If "the death of any person results" from such a kidnapping, the statute mandates a sentence of either death or life imprisonment. *Id.*

Kidnapping is a specific intent crime. *See United States v. Buhl*, 712 F. Supp. 53, 55 (E.D. Pa. 1989); *United States v. Weir*, 587 F. App'x 300, 306-07 (6th Cir. 2014). There is ample evidence that Mr. Rivera and his associates intended to unlawfully seize their victims by tying them up in the garage and to carry them away by taking them to the Schuylkill River, satisfying the first element of the crime. As for the second element—that the victims be held "for ransom, reward, or otherwise"—it is well-established that this language is interpreted broadly to "include any object of kidnaping which the perpetrator might consider of sufficient benefit to himself to induce him to undertake it." *United States v. Wolford*, 444 F.2d 876, 881 (D.C. Cir. 1971) (quoting *United States v. Parker,* 103 F.2d 857, 861 (3d Cir. 1939), *cert. denied*, 307 U.S. 642 (1939)). Here, there is substantial evidence from which a reasonable jury could conclude that Mr. Rivera

4

kidnapped the victims to "secure some benefit to himself." *Gooch v. United States*, 297 U.S. 124, 128 (1936).

Mr. Rivera does not seriously dispute either of these elements. Rather, he appears to focus on the third element—interstate commerce—and argues that there was no evidence that he formed the intent to kidnap the victims *prior to* traveling to Philadelphia. This argument is unavailing for two reasons.

First, the federal kidnapping statute does not require that an offender intend to commit a kidnapping before crossing state lines. Though the Third Circuit Court of Appeals has not addressed this issue, several courts of appeals have concluded that the "requirement that the offender cross state lines merely furnishes a basis for the exercise of federal jurisdiction and does not constitute an element of the offense." *United States v. Napier*, 518 F.2d 316, 319 (9th Cir. 1975); *see also United States v. Bankston*, 603 F.2d 528, 532 (5th Cir. 1979); *United States v. Duncan*, 855 F.2d 1528, 1537 (11th Cir. 1988). The text of the statute supports this analysis. Section 1201(a) sets out the substantive elements of the crime of kidnapping: unlawful seizure or carrying away, and holding for ransom, reward, or otherwise. Then, five separate jurisdictional bases—including an offender traveling in interstate commerce—are set out in numbered sub-paragraphs, all preceded by the term "when." 18 U.S.C § 1201(a)(1-5). This structure plainly suggests that it is the act of kidnapping for ransom or other benefit that is proscribed by § 1201(a), but that the statute—and federal jurisdiction—will only apply "when" one or more of the jurisdictional requirements are satisfied.[2] This reading is bolstered by the fact that at least one of

---

[2] In contrast, when Congress has made interstate travel *with a particular intent* an element of a crime, it has done so clearly. *See, e.g., United States v. Casile*, 490 F. App'x 470, 473-74 (3d Cir. 2012) (explaining that 18 U.S.C. § 2261A(1), which criminalizes "travel[] in interstate or foreign commerce . . . with the intent to . . . harass, or intimidate another person," requires that a defendant "possess[] the intent to harass or intimidate concurrently with the interstate travel").

§ 1201(a)'s alternative jurisdictional bases—that the victim be a federal officer—has been held by the Third Circuit in other criminal statutes to be merely jurisdictional and not a substantive element of the offense. *See, e.g., United States v. Goodwin*, 440 F.2d 1152, 1155 (3d Cir. 1971).

This conclusion aligns with how the Third Circuit Court of Appeals has treated other criminal statutes with similar jurisdictional nexuses. *See United States v. Turley*, 891 F.2d 57, 60 (3d Cir. 1989) ("Because use of the mails is merely the jurisdictional element by which a state fraud offense is turned into the federal crime of mail fraud, we hold that specific intent to use the mails need not exist as an essential element of the scheme."); *United States v. Iannelli*, 477 F.2d 999, 1002 (3d Cir. 1973) (government need not prove that a defendant had knowledge that five or more persons were participating in a gambling enterprise to sustain a conviction under 18 U.S.C. § 1955 because "[t]he number of participants is merely a jurisdictional element, determining when the illegality has a sufficient effect upon interstate commerce," and "[t]he jury does not have to find knowledge of such jurisdictional elements in order to convict"); *United States v. Crutchley*, 502 F.2d 1195, 1201 (3d Cir. 1974) (government need not prove that a defendant was aware that stolen property belonged to the United States to sustain a conviction under 18 U.S.C. § 641 because the requirement was merely jurisdictional).

Because Mr. Rivera's interstate travel was merely the basis for federal jurisdiction here, as opposed to a substantive element of the crime, the Government did not need to prove intent or any other specific *mens rea* with respect to his crossing state lines. It suffices that Mr. Rivera intended to, and did, commit the substantive crime of kidnapping.

Second, even if the interstate commerce requirement were not jurisdictional, there is substantial evidence from which a reasonable jury could conclude that Mr. Rivera indeed intended to both travel in interstate commerce and use an instrumentality of interstate commerce in

furtherance of the kidnapping.  Mr. Rivera asserts that he did not intend to commit a kidnapping before traveling to Philadelphia, but that is beside the point.  It suffices for purposes of § 1201(a) that Mr. Rivera crossed state lines *after* committing the kidnapping offense.  Indeed, the driving animus behind the federal kidnapping statute was the need to ensure that kidnappers could not "thwart[] arrest by police officers in the state of origin" by crossing state lines with their victims. *Napier*, 518 F.2d at 319.  That purpose would be severely undermined if the statute did not extend to offenders who crossed state lines only after the substantive kidnapping occurred.

Moreover, when Congress amended the federal kidnapping statute in 2006, it extended the jurisdictional nexus to also apply whenever "the *offender* travels in interstate or foreign commerce or uses the mail or any means, facility, or instrumentality of interstate or foreign commerce in committing or in furtherance of the commission of the offense." Pub. L. No. 109-248, 120 Stat. 616 (codified at 18 U.S.C. § 1201(a)(1)) (emphasis added).  This means that a kidnapping falls within the statute's ambit if a defendant travels in interstate commerce or uses an instrumentality of commerce to commit the crime or in furtherance thereof, even when the kidnapping occurred in a single state. *See United States v. Small*, 988 F.3d 241, 251 (6th Cir. 2021)

For example, in *Small*, the defendants traveled by car from West Virginia to Tennessee, where they broke into a victim's home, tied her up, and robbed her before escaping back to West Virginia.  988 F.3d at 251.  The Sixth Circuit held that the use of a car to cross state lines to and from the kidnapping sufficed to show that the defendants used an instrumentality of commerce in furtherance of the kidnapping. *Id.* (citing *United States v. Bishop*, 66 F.3d 569, 588 (3d Cir. 1995) ("[M]otor vehicles are the quintessential instrumentalities of modern interstate commerce.") (internal quotation marks omitted)).  Like Mr. Rivera, the defendants in *Small* argued that their interstate travel was "too attenuated from the alleged kidnapping to create a nexus to interstate

7

commerce." *Id.* The Sixth Circuit disagreed, explaining that "[e]ven if we were to conclude that at the time defendants used the car [to travel to Tennessee], the plan was to commit only robbery," the fact that the defendants "used the car to escape the scene of the crime" was sufficient to satisfy the interstate commerce requirement. *Id.* at 252. So, too, here. Not only did Mr. Rivera and his associates use a van—an instrumentality of commerce—as part of the kidnapping, but they also used a motor vehicle to flee Philadelphia, cross state lines, and return to Mr. Trieu in New York to be paid. As in *Small*, a reasonable jury could conclude that Mr. Rivera's use of a vehicle to cross state lines was in furtherance of the kidnapping to the extent that it was necessary both to escape the scene of the crime and to profit from the kidnapping.

For all these reasons, the Court finds that there was sufficient evidence to prove every element of the kidnapping charges of which Mr. Rivera was convicted.

### B. Conspiracy

To prove a conspiracy to kidnap, the Government must show "(1) an agreement between two or more persons to achieve an unlawful goal; (2) the defendant intentionally joined the agreement, with knowledge of its objective; and (3) an overt act taken in furtherance of the conspiracy by a co-conspirator." *United States v. Whiteford*, 676 F.3d 348, 357 (3d Cir. 2012). The Government must also prove "'that the intended future conduct they had agreed upon include[d] all the elements of the substantive crime.'" *United States v. Manzo*, 636 F.3d 56, 68 (3d Cir. 2011) (quoting *United States v. Rose*, 590 F.2d 232, 235 (7th Cir. 1978)).

These elements "can be proven entirely by circumstantial evidence." *United States v. Brodie*, 403 F.3d 123, 134 (3d Cir. 2005). Nonetheless, the Court must "give close scrutiny to the sufficiency of the government's evidence in a conspiracy case." *Id.* (internal quotation marks omitted). To do so, the Court may not consider any piece of evidence in isolation, but rather "must

determine 'whether all the pieces of evidence against the defendant, taken together, make a strong enough case to let the jury find [the defendant] guilty beyond a reasonable doubt.'" *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987) (quoting *United States v. Allard*, 240 F.2d 840, 841 (3d Cir. 1957)).

Mr. Rivera argues that there is insufficient evidence to prove that he formed any agreement to commit kidnapping, focusing again on his contention that he was not part of any discussion about kidnapping prior to leaving New York. At best, he maintains that the evidence demonstrates only that he and his associates agreed to assault and threaten the victims at that time. This is beside the point. Even if Mr. Rivera and the others had not formed an agreement to commit kidnapping while in New York, the existence of a later agreement to do so can be inferred from their actions while in Philadelphia. Mr. Rivera and his associates worked together to bind, hold, and carry away the victims; this is sufficient to prove both a tacit agreement and an overt act. *Cf. Small*, 988 F.3d at 252-53. And as discussed above, because the interstate travel element is jurisdictional, rather than substantive, the Government did not need to prove that Mr. Rivera formed an agreement to travel across state lines to commit a kidnapping, only that, at some point in the process, there was an agreement to kidnap.[3] Therefore, the evidence was sufficient for a reasonable jury to convict Mr. Rivera of conspiracy to kidnap.

## II.     The Weight of the Evidence

For the reasons discussed above, the evidence presented at trial was sufficient to support Mr. Rivera's kidnapping and conspiracy convictions. Alternatively, Mr. Rivera contends that a new trial is warranted under Rule 33 because the verdict was against the weight of the evidence.

---

[3] As discussed above, even if the interstate commerce element were substantive (which it is not), there is substantial evidence to prove that Mr. Rivera did in fact form an agreement with his associates to use an instrumentality of commerce as part of their kidnapping plan and to travel across state lines in furtherance of the kidnapping after it occurred.

He notes that there was no physical evidence tying him to the crimes, that the witnesses who testified against Mr. Rivera all did so as part of agreements with the Government to cooperate in exchange for reduced prison sentences, and that portions of these witnesses' testimonies were inconsistent.

First, the credibility of any witness is fully the province of a jury, and conflicting or inconsistent testimony is not a sufficient ground for granting a new trial. *See, e.g., United States v. Indelicato*, 611 F.2d 376, 387 (1st Cir. 1979); *Marshall v. United States*, 436 F.2d 155, 156 n.2 (D.C. Cir. 1970). "Where a witness' testimony is such that reasonable men could not have believed the testimony, however, then exceptional circumstances are present and the district court may take the testimony away from the jury." *United States v. Kuzniar*, 881 F.2d 466, 470-71 (7th Cir. 1989) (citing *Holland v. Allied Structural Steel Co., Inc.*, 539 F.2d 476, 483 (5th Cir. 1976), *cert. denied*, 429 U.S. 1105 (1977)). This, however, is "an extremely narrow" exception that "can be invoked only where the testimony contradicts indisputable physical facts or laws." *Id.* at 471 (citations omitted). Mr. Rivera points to no such facts or laws that make the witnesses' testimony so impossible that a reasonable jury could not have believed it. Rather, he merely points to inconsistencies between the different accounts offered by the witnesses. But it is the role of the jury, not the court, to sift through any inconsistencies and determine who is most credible. Mr. Rivera's arguments do not warrant a new trial under Rule 33.

## III.   The Motion to Suppress

Before the trial, Mr. Rivera moved to suppress evidence that Mr. Nguyen identified him from a photograph on the grounds that the identification was suggestive and unreliable. The Court denied this motion in a written opinion explaining why this evidence was admissible. Now Mr. Rivera argues as an alternative basis for a new trial that the Court erred in failing to suppress this

10

evidence. He does not, however, offer any new argument that calls into question the Court's prior reasoning or its conclusion that the identification in question was sufficiently reliable.

## IV.    Consciousness of Guilt

At trial, the Government introduced the testimony of FBI Special Agent Margaret Girard who testified that at the time of Mr. Rivera's arrest, he was in possession of a police scanner, fake identification cards, firearms, a large amount of U.S. currency, and multiple cell phones, all of which was admitted as evidence of Mr. Rivera's consciousness of guilt. Special Agent Girard testified that, when she saw the police scanner, she did not know what it was until another agent explained it to her. Mr. Rivera contends that the unknown agent's explanation was inadmissible hearsay evidence.

Without regard to the hearsay issue, all the other items found in Mr. Rivera's possession are more than sufficient evidence to infer consciousness of guilt. Under Rule 33, the burden is on Mr. Rivera to show "(1) that error occurred at trial, and (2) that error had a substantial influence on the verdict." *United States v. MacInnes*, 23 F. Supp. 3d 536, 541 (E.D. Pa. 2014) (quoting *United States v. Amirnazmi*, 648 F. Supp. 2d 718, 720 (E.D. Pa. 2009), *aff'd*, 645 F.3d 564 (3d Cir. 2011)). Thus, even if Mr. Rivera could demonstrate that the unknown agent's explanation was improper hearsay, he would still need to show "a serious danger that a miscarriage of justice has occurred" and "an innocent person has been convicted." *Silveus*, 542 F.3d at 1004-05. In light of all the other evidence of consciousness of guilt, Mr. Rivera has failed to meet this burden. *Cf. United States v. Jose*, Nos. 14-cr-652-6, 14-cr-652-10, 2016 WL 4650617, at *11 (E.D. Pa. Sept. 7, 2016) (denying a Rule 33 motion on hearsay grounds and explaining that "even if the admission of testimony . . . constitutes hearsay, the error is harmless").

11

## CONCLUSION

For these reasons, the Court denies Mr. Rivera's motion for acquittal under Rule 29 and his motion for a new trial under Rule 33. An appropriate order follows.

BY THE COURT:

**GENE E.K. PRATTER**
**UNITED STATES DISTRICT JUDGE**